United States District Court
Southern District of Texas
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

MAY 0 9 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| RAMONA BARRERA and DAVID BARRERA | § § § | |
| vs. | § § § | CASE NUMBER B-02-080 |
| BROWNSVILLE-VALLEY REGIONAL MEDICAL CENTER, ET AL. | § § § § | <u>JURY REQUESTED</u> |

## MOTION TO REMAND

### I. Background

1.    On February 25, 2002, plaintiffs Ramona Barrera and David Barrera filed suit against two physicians, Dr. Richard L. Fremaux and Dr. Francis M. Gumbel, and one hospital and its related entities, Brownsville - Valley Regional Medical Center, Columbia Valley Healthcare System, L.P., Valley Regional Medical Center, and HCA, Inc.

2.    The suit arises from medical treatment provided by Drs. Gumbel, Fremaux, and others to Ramona Barrera while she was a patient at Valley Regional Medical Center in Brownsville, Texas in February 2000.[1]  The plaintiffs contend that substandard medical care during this hospitalization resulted in very serious bodily injury damages to Ramona Barrera and loss of consortium-type damages to her husband, David Barrera.[2]

---

[1]    Refer to Plaintiffs' Original Petition at ¶ 16-31. [Tab A].

[2]    *Id.* at ¶ 49-50.

3.     Dr. Gumbel was served with citation on March 1, 2002.[3] The remaining defendants were served thereafter.

4.     Alleging federal question jurisdiction, the hospital defendants, Brownsville Valley Regional Medical Center, Columbia Valley Healthcare System, L.P., and Valley Regional Medical Center, removed this case to the United States District Court for the Southern District of Texas, Brownsville Division, on April 22, 2002. The Consent to Removal, signed by all defendants except HCA, Inc., was also filed on April 22, 2002.[4]

5.     The removal was clearly improper, both because it was untimely in two respects, and because there is no reasonable argument that a federal question is raised in the complaint. Accordingly, plaintiffs seek a remand to the state court where it was originally filed.

## II. Removal Jurisdiction

6.     Any lawsuit filed in state court can be removed by a defendant if the federal court would have had "original jurisdiction" over the suit.[5] If the federal court would not have had original jurisdiction, the case must be remanded back to the state court.[6]

7.     Federal courts are courts of limited jurisdiction.[7] Therefore, on motion to remand, the district court must presume that the suit lies outside its limited jurisdiction,

---

[3]     Refer to return of citation concerning defendant Dr. Gumbel. [Tab B].

[4]     Refer to Consent to Removal. [Tab C].

[5]     28 U.S.C. § 1441(a).

[6]     28 U.S.C. § 1447(c).

[7]     *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994).

placing the burden of establishing federal jurisdiction, procedurally as well as substantively, exclusively on the removing party.[8] Stated differently, once a plaintiff files a motion to remand, it is the burden of the removing defendants to prove the removal was timely and that jurisdiction vests with the federal court because the claims pleaded arise under the Constitution, laws, or treaties of the United States.[9]

### III. Procedural Defects

#### A. Failure to Remove Within Thirty Days of Service of First Defendant

8.    A civil lawsuit can only be removed within 30 days of the service date.[10] When there are multiple defendants, the 30 day period begins to run as soon as the first defendant is served, so long as the case is then removable.[11]

9.    In this instance, defendant Dr. Gumbel was served on March 1, 2002. However, the case was not removed until April 22, 2002, fifty-two days thereafter.[12] Accordingly, the case was not timely or appropriately removed and must be remanded.[13]

---

[8]    *Id. See also Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir.), *cert. denied,* ___ U.S. ___, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001).

[9]    *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808-09 (1986).

[10]    28 U.S.C. § 1446(b).

[11]    *Getty Oil Corp. v. Insurance Co. of North America,* 841 F.2d 1254, 1262-63 (5th Cir. 1988).

[12]    Refer to Notice of Removal [Tab D], and Tab B.

[13]    *Getty Oil Corp.,* 841 F.2d at 1262.

10.   The only exception to this rule is if the removed claim is a separate and independent federal claim under 28 U.S.C. § 1441(c).[14]   The United States Supreme Court has clearly and unequivocally determined when a cause of action will be considered "separate and independent" under this exception:

> [w]here there is a single wrong to [a] plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c).

*American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 14 (1951).

11.   The Fifth Circuit, following *American Fire,* determined that the test for separateness must focus on the separateness of the wrong to the plaintiff.[15]  Beyond the separate wrong requirement, the statute also requires that the claims be independent, which can never be the case if the claims against the various defendants: "involve substantially the same facts."[16]

12.   In making either a procedural or substantive determination, the court must refer to the plaintiff's "well-pleaded complaint."[17]

13.   In this instance, no fair reading of the plaintiffs' complaint could lead to a conclusion that a separate and independent cause of action is being alleged solely against the hospital defendants.  Indeed, the removing defendants themselves have admitted

---

[14]   *Henry v. Independent Am. Sav. Ass'n,* 857 F.2d 995, 999 (5th Cir. 1988).

[15]   *Eastus v. Blue Bell Creameries,* 97 F.3d 100, 104 (5th Cir. 1996).

[16]   *Id.*

[17]   *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9-10 (1983).

-4-

that no separate and independent claim is brought against them under the subject Medicare regulations, but that rather the hospital is being sued with reference to same only for the purpose of establishing vicarious liability under Texas state common law against the hospital defendants for the negligence of the defendant physicians:

> Plaintiffs are claiming that the medicare law [sic] provide the basis for the hospital Defendants to have liability for the doctor Defendants.[18]

14.    Since no separate and independent claim is raised against the hospital defendants, their time to remove the case began running when Dr. Gumbel was served, on March 1, 2002.[19]   Because the case was not removed until April 22, 2002, the removal was untimely and the case must be remanded.[20]

### B. Failure to Timely File Consent to Removal by All Defendants

15.    As an additional basis for remand, the law is clear that the Consent to Removal by all defendants must be filed within thirty days of the date of service on the first defendant.[21] In this instance, the Consent for Removal was not filed until fifty-two days after Dr. Gumbel was served.

16.    Accordingly, the removal is defective, compelling remand.[22]

---

[18]    Refer to Notice of Removal, p. 2, ¶ II. [Tab D]

[19]    *Getty Oil Corp.,* 841 F.2d at 1262-63.

[20]    *Id.*

[21]    *Id.* at 1262.

[22]    *Id.*

### IV.  Substantive Defect - Lack of Original Jurisdiction

17.     As the sole basis to allege a federal question, the removing defendants cite the plaintiffs' mention in the complaint of certain Medicare regulations.[23]  That is insufficient to create federal question jurisdiction as a matter of law.

18.     To determine whether removal is appropriate when a federal statute is referenced in the complaint, the courts must first determine whether the case "arises under federal law."[24] In making this determination, the courts generally rule that the suit "arises under the law that creates the cause of action."[25]

19.     Removal is inappropriate if the only cause of action asserted is clearly a state cause of action, even if a violation of a federal regulation is alleged to be evidentiary of a deviation from the applicable standard of care.[26]  Indeed, state law claims often incorporate federal standards or require the interpretation of federal law.[27]  In *Howery v. Allstate Ins. Co.*, the Fifth Circuit very recently held that a federal question is raised only when resolution of the federal right is necessary to resolve the case.[28]

---

[23]    Tab D, p. 2, ¶ II.

[24]    *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 163 (1997).

[25]    *American Well Works Co. v. Layne & Bowler, Inc.,* 241 U.S. 257, 260 (1916).

[26]    *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 915-17 (5th Cir. 2001).  *See also Sercye-McCollum v. Ravenswood Hosp. Med. Center,* 140 F.Supp.2d 944, 946 (N.D. Il. 2001).

[27]    *Howery,* 243 F.3d at 917.

[28]    *Id.*

20.    In *Howery*, the plaintiff sued under Texas' DTPA, contending that the defendant's violation of the federal Fair Credit Reporting Act constituted one DTPA violation.[29] Since the plaintiff alleged a number of violations by the defendant which gave rise to a state-based DTPA cause of action, it was not necessary for the question under the FCRA to be resolved in the suit. Accordingly, removal was deemed improper.[30]

21.    In the case at bar, nowhere in plaintiffs' complaint is a federal cause of action alleged. Rather, a fair reading of the plaintiffs' complaint clearly and unequivocally demonstrates that the hospital defendants were sued exclusively under Texas common law claims. The plaintiffs merely contend that the Medicare regulations are evidence that: (a) the hospital defendants voluntarily undertook a duty under Texas common law;[31] (b) by agreeing to be bound by the regulations, the hospital defendants voluntarily assumed a "non-delegable duty" under Texas common law;[32] and (c) the hospital deviated from the applicable standard of care under Texas common law negligence claims.[33]

---

[29]    *Id.* at 918.

[30]    *Id.* at 918-19.

[31]    Refer to Plaintiffs' Original Petition, ¶ 39-41. [Tab A], citing the Texas common law case of *Torrington v. Stutzman,* 46 S.W.3d 829, 838 (Tex. 2001).

[32]    Tab A at ¶ 42-43, citing the Texas common law case of *MBank El Paso, N.A. v. Sanchez,* 836 S.W.2d 151, 153 (Tex. 1992).

[33]    Tab A at ¶ 44-46, citing the Texas common law case of *Perry v. S.N.,* 973 S.W.2d 301, 305 (Tex. 1998).

22.    The Medicare regulations in issue were enacted pursuant to authority granted in the Medicare Act.[34] It has been definitively determined that neither the Medicare statute nor its regulations create or imply a private cause of action.[35]

23.    Moreover, the plaintiffs have never contended that these Medicare regulations create a statutory or implied cause of action.  They have merely alleged that the hospital defendants' violations of these regulations gives rise to liability under Texas common law.

24.    According to the United States Supreme Court, under this precise circumstance, no federal question jurisdiction exists as a matter of law:

> a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim "arising under the Constitution, laws, or treaties of the United States."[36]

Notably, this court was recently affirmed by the Fifth Circuit in making the same determination.[37]

---

[34]    42 USC § 1395(b), *et seq.  See also Fischer v. United States,* 529 U.S. 667, 671-72 (2000).

[35]    *Wheat v. Mass,* 994 F.2d 273, 276 (5th Cir. 1993); *Stewart v. Bernstein,* 769 F.2d 1088, 1092-93 (5th Cir. 1985); *Brogdon v. National Healthcare Corp.,* 103 F.Supp.2d 1322, 1330-31 (N.D. Ga. 2000).

[36]    *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 817 (1986). *Accord, Howery,* 243 F.3d at 918-19.

[37]    *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.,* 276 F.3d 683, 685 (5th Cir. 2001).

25.    In accordance with the prevailing authority, plaintiffs respectfully move that this case be remanded to state court.

Respectfully submitted,

_____
Timothy D. Riley
Attorney-in-Charge
Federal Admissions No. 521
State Bar No. 16931300

Of Counsel:

**RILEY LAW FIRM**

P. O. Box 542179
Houston, Texas  77254-2179
Telephone  (713) 868-1717
Telecopier (713) 868-9393

## Certificate of Service

This is to certify that a copy of this document was served on the following known counsel for parties to this cause, by USCMRRR, on May 8, 2002:

Carla M. Saenz
CARLA M. SAENZ & ASSOCIATES
1325 Palm Boulevard, Suite H
Brownsville, Texas 78520-7239

William R. Gault
BRIN & BRIN, P.C.
1325 Palm Boulevard, Suite A
Brownsville, Texas 78520-7268

J. Kevin Oncken
UZICK & ONCKEN, P.C.
8200 I-10 West, Suite 208
San Antonio, Texas 78230

Carlos Mattioli
SHANNON, MARTIN, FINKELSTEIN & SAYRE
909 Fannin, Suite 2400
Houston, Texas  77010-1026

Carlos Cisneros
Chuck Mattingly
CISNEROS & MATTINGLY
845 E. Harrison, Suite A
Brownsville, Texas 78520-7153

_____
Timothy D. Riley

-9-

Barra\Master Folder\Plaintiff's Pleadings\Mtn to Remand.doc

CERTIFIED COPY

NO. 2002-823-D

| | | |
|---|---|---|
| RAMONA BARRERA and<br>DAVID BARRERA | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| vs. | §<br>§ | |
| BROWNSVILLE - VALLEY REGIONAL<br>MEDICAL CENTER; COLUMBIA VALLEY<br>HEALTHCARE SYSTEM, L.P.; VALLEY<br>REGIONAL MEDICAL CENTER; HCA,<br>INC.; RICHARD L. FREMAUX, M.D.; and<br>FRANCIS M. GUMBEL, M.D. | §<br>§<br>§<br>§<br>§<br>§ | CAMERON COUNTY, TEXAS<br><br>138 JUDICIAL DISTRICT |

FILED 9:00 O'CLOCK A M
AURORA DE LA GARZA DIST. CLERK
FEB 2 5 2002
DISTRICT COURT OF CAMERON COUNTY, TEXAS

## PLAINTIFFS' ORIGINAL PETITION

### *Discovery*

1.   Pursuant to TEX. R. CIV. PROC. 190.1 and 190.4(a), plaintiffs move that discovery in this cause be conducted pursuant to Level 3.

2.   An appropriate docket control order will be submitted to the court for its consideration when the defendants have appeared and answered in this cause.

### *Parties*

### *Plaintiffs*

3.   Ramona Barrera is an individual and a resident of Cameron County, Texas.

4.   David Barrera is the lawful spouse of Ramona Barrera, and also is an individual and a resident of Cameron County, Texas.

### *Defendants*

5.   Defendant Brownsville - Valley Regional Medical Center, Inc., is a Texas or foreign corporation, which has designated a registered agent for service of process, CT Corporation System, 350 North St. Paul, Dallas, Texas 75201. Service is requested on this defendant.

CERTIFIED COPY

6.    Defendant Columbia Valley Healthcare Systems, L.P., is a Texas or foreign corporation, limited partnership, or other form of business entity, which has designated a registered agent for service of process, CT Corporation System, 350 North St. Paul, Dallas, Texas 75201. Service is requested on this defendant.

7.    Defendant HCA, Inc., is a foreign corporation, and is the parent corporation of the entity that runs Valley Regional Medical Center. It can be served by serving its registered agent for service of process, CT Corporation System, 530 Gay Street, Knoxville, Tennessee 37902. Service on this defendant by United States certified mail, return receipt requested, is hereby requested.

8.    Defendant Valley Regional Medical Center is an assumed name, trade name, common name, subsidiary, or affiliate of one or more of the corporate defendants named above, and is hereby sued under this trade name, pursuant to TEX. R. CIV. PROC. 28. "Valley Regional Medical Center" can be served by serving the registered agent for Columbia Valley Healthcare System, L.P., CT Corporation System, 350 North St. Paul, Dallas, Texas 75201. Service is requested on this defendant.

9.    Defendant Francis M. Gumbel, M. D., is an individual resident of the State of Texas, who maintains an office in, and regularly conducts business in Cameron County, Texas. Service of process may be had on this defendant at his place of business, located at 645 Villa Maria Blvd., Brownsville, Texas 78520, which service is herein requested.

10.    Defendant Richard L. Fremaux, M. D., is an individual resident of the State of Texas, who maintains an office in, and regularly conducts business in Cameron County, Texas. Service of process may be had on this defendant at his place of business,

CERTIFIED COPY

located at 100A Alton Gloor Boulevard, Brownsville, Texas 78526, which service is herein requested.

## *Jurisdiction*

11.    Plaintiffs bring suit for all damages to which they are entitled by law.  Plaintiffs' damages exceed the minimum jurisdictional limits of this Court.

## *Venue*

12.    All of plaintiffs' causes of action occurred within Cameron County, Texas, giving rise to venue within this jurisdiction.

## *Vicarious Liability*

13.    Whenever in this petition it is alleged that the defendants did any act or thing, it is meant that the defendants' agents, officers, servants, borrowed servants, employees, or representatives did such act or thing and that, at the time such act or thing was done, it was done with the full authorization or ratification of defendants, or was done in the normal and routine course and scope of employment of defendants' officers agents, servants, borrowed servants, employees or representatives.  The principal is vicariously liable for the acts of the agent because of an employer employee status, agency by estoppel, ostensible agency, or borrowed servant doctrine.

## *Satisfaction of All Conditions Precedent*

14.    On or about November 2, 2001, plaintiffs gave defendants written notice of the claim herein sued on by certified mail, return receipt requested, as required by Article 4590i, Section 4.01, Subdivision (a) of the Revised Civil Statutes of Texas.

-3-

CERTIFIED COPY

15. Pursuant to TEX. R. CIV. PROC. 54, plaintiffs aver that all conditions precedent to recovery as to all defendants have been performed, have occurred, or have been waived.

### Statement of Facts

16. In February 2000, Ramona Barrera was a 69-year-old woman who was generally healthy and active, but who suffered from chronic hypertension and impaired renal function. On February 1, 2000, she had a renal scan which revealed asymmetry in perfusion to the left kidney. Ms. Barrera's primary care physician, Dr. Francis Gumbel, referred Ms. Barrera to Valley Regional Medical Center for renal sonograms to be performed by Dr. Richard L. Fremaux. These tests not unexpectedly revealed renal arterial stenosis bilateral, greater left than right.

17. Accordingly, Dr. Gumbel and Dr. Fremaux decided to perform a renal angioplasty, which was not indicated under the circumstances.

18. The renal arterial catheterization was negligently performed, resulting in an occlusion of the left renal artery which Dr. Fremaux could not correct.

19. When Dr. Fremaux could not reverse the occlusion, a surgeon, Dr. Jose Zamora, was called in to perform a left renal arterial bypass graft. The graft was reported as successful, however, the function to both kidneys was permanently lost, forcing the patient into a lifetime of hemodialysis.

20. Following surgery, it was noted that the lower extremities were extremely cold and no palpable or audible pulse was noted. It was felt that Ms. Barrera had an acute ischemic event involving the lower extremities and she was found to have bilateral femoral arterial thrombi. Embolectomies were performed.

CERTIFIED COPY

21.  Post-operatively, due to inadequate nursing care and supervision by the attending physician, Dr. Gumbel, the patient developed a decubitus ulcer on her right heel.

22.  On February 23, 2000, the patient's peripheral pulses to both legs and feet were palpable.

23.  On February 24, 2000, pedal pulses were audible on Doppler only.  Although the patient had demonstrated a tendency toward clotting, her anticoagulants were inexplicably discontinued by her physicians, and no nurse brought that inappropriate order to the attention of a nursing supervisor.

24.  At 1500, pulses were audible per Doppler, but the right pedal dorsalis was difficult to find and the patient's foot was mottled and cool to touch.  A warm blanket was placed on both feet by Nurse Critten.  At 1630 Ms. Barrera had tachycardia and a temperature of 100.3 axillary.

25.  Dr. Gumbel was paged and he ordered only Tylenol, but did not come in to see the patient.  At 1930, the left pedal pulses were audible with Doppler, but no pedal pulses were heard on the right foot.  The right foot was also pale and cool to touch.

26.  Dr. Zamora was paged.  At 2000, Dr. Zamora was again paged.  Dr. Zamora returned the page at 2025 and a stat angiogram of the right femoral artery was ordered.  At 2045, Dr. Zamora was in to see Ms. Barrera and he cancelled the angiogram.  It was decided to do a right below the knee amputation.

27.  The pathology report showed extensive gangrenous changes mainly the plantar surface of the heel and the first digit, manifested by purple discoloration of the skin, which alone would have necessitated amputation.  This gangrenous condition was secondary to the decubitus ulcer that had been allowed to develop and fulminate

CERTIFIED COPY

through inadequate medical and nursing care.

28.    On February 23, 2000, it was noted there were pressure sores on both heels. Heel protection was applied to both heels. On February 24, 2000 at 1915, Dr. Gumbel wrote an order to "keep heels off bed at all times". On February 26, 2000 at 0730 the nurses' notes state that the left heel has a nickel sized redness and the coccyx has a bruised spot. On February 27, 2000, a Braden scale for predicting pressure sores was assessed for Ms. Barrera with a score of 13 which is a moderate to high risk for developing pressure sores. On March 2, 2000, at 0700 a ½ cm skin tear to the coccyx area was noted. On March 5, an additional area of breakdown was noted on the back of her right thigh. On March 7, the pressure sore in the coccyx area was classified as Stage II. Ms. Barrera was discharged with pressure sores.

29.    Throughout her hospital stay, Ms. Barrera's white cell count was elevated, ranging from over 41,000 to over 17,000 at the time of her discharge. No source for her elevated white count was found before her discharge. Nonetheless, on March 16, 2000, Ms. Barrera was discharged, with remaining gangrene in her stump.

30.    On April 21, 2000, Ms. Barrera was admitted to Brownsville Medical Center with an infection of her right leg. Her white count on day of admission was 17,000. She was diagnosed with gangrene and anaerobic infection of the right below knee stump. On April 26, Ms. Barrera underwent a right above the knee amputation, at the hip.

31.    Today, Ms. Barrera remains with her right leg amputated at the hip. She is confined to a wheelchair and is on permanent hemodialysis.

CERTIFIED COPY

### Causes of Action

### Informed Consent

32.    Defendants failed to secure adequate informed consent for the initial renal angioplasty.

### Negligence

33.    Defendants were each negligent in one or more respects in connection with their care and treatment of Ramona Barrera, as described in the above paragraphs and for the emotional distress inflicted upon the plaintiffs. Such negligence on the part of defendants was a proximate cause of the injuries to the plaintiffs complained about herein and of the resulting damages.

### Hospital Liability

### I. Vicarious Liability for Nursing Negligence

34.    The hospital is liable for the negligent nursing care of its nurses.

### II. Liability for Inadequate Equipment and Supplies

35.    It is the duty of the hospital to ensure that adequate and properly functioning medical supplies and equipment are available as needed for patient care.

36.    To the extent that improperly functioning, inadequate, or missing medical equipment, drugs, and supplies were a cause of the damages suffered by the plaintiffs, the hospital is liable therefor.

### III. Liability for Failure to Secure Informed Consent and Physician Negligence

37.    In addition, Valley Regional Medical Center is a voluntary participating hospital in the Medicare program.   There are numerous Medicare regulations applicable to participating hospitals.

-7-

CERTIFIED COPY

38.    Stated broadly, the regulations quoted above impose the following specific duties on

the hospital:

a.    *Nursing services* - (a) to provide adequately trained and supervised nurses
in sufficient numbers to meet patient needs, (b) with a nursing care plan for
each patient, and (c) have each patient's care supervised and evaluated by
a registered nurse. 42 C.F.R. §§ 482.23.

b.    *Surgical services* - (a) must be provided in accordance with acceptable
standards of practice, (b) must be designed to assure the achievement and
maintenance of high standards of medical practice and patient care, (c) must
be a complete history and physical in every patient's chart prior to surgery,
(d) must be preceded by a properly executed informed consent form for the
operation to be performed. 42 C.F.R. §§ 482.51.

c.    *General supervisory/oversight duties:* (a) be responsible for services
furnished in the hospital, (b) ensure that a contractor furnishes services in
compliance with the requirements imposed on the hospital, and (c) ensure
that all services provided by contractors are provided in a "safe and effective
manner.

42 CFR §§ 482.12(e).

38.    Clearly, these regulations envision that certain anesthetic, surgical, nursing, and

other services will be provided by persons other than hospital employees. However,

the regulations also provide that a participating hospital cannot delegate these

services to contractors and escape liability for damages that result from the failure

of the contractors to comply with these requirements.

### IV. Voluntary Assumption of Duty

39.    Under Texas law, a hospital ordinarily has no duty to supervise the practice of

medicine of independent contractor physicians on staff. However, although a person

may have no duty to act, once he voluntarily undertakes a duty, he is obligated to

carry out the function in a non-negligent fashion. *Otis Eng'g Corp. v. Clark,* 668

S.W.2d 307, 309 (Tex. 1983); *Klager v. Worthing,* 966 S.W.2d 77, 83 (Tex. App. -

CERTIFIED COPY

San Antonio 1996, writ denied).

40.    For this "negligent undertaking" to apply:

    a.    the failure to exercise such care must increase the risk of harm; or

    b.    the harm must be suffered because the plaintiff relied on the other's undertaking.

*Torrington Co. v. Stutzman*, 46 S.W.2d 829, 838 (Tex. 2001) (*citing* RESTATEMENT (SECOND) OF TORTS 323 (1965).

41.    In the Medicare context, both prongs of *Torrington* are met. First, for a hospital to fail to ensure that services are rendered in a safe and effective manner increases the risk of that occurring. Second, most Medicare plaintiffs, including Ramona Barrera, enter Medicare-approved hospitals in reliance of the hospitals' compliance with the duties imposed by Medicare.

### V. The Non-Delegable Duty Doctrine

42.    Texas recognizes that: "when a duty is imposed by law on the basis of concerns for public safety, the party bearing the duty cannot escape it by delegating it to an independent contractor." *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 153 (Tex. 1992). This conclusion is supported by the Restatement (Second) of Torts: "One who by statute or administrative regulation is under a duty to provide specified safeguards or protections for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions." RESTATEMENT (SECOND) OF TORTS §§ 424 (1965). Comment a to the Restatement notes:    "The rule stated in this Section applies whenever a statute or an

-9-

CERTIFIED COPY

administrative regulation imposes a duty upon one doing particular work to provide safeguards or precautions for the safety of others. In such a case the employer cannot delegate his duty to provide such safeguards or precautions to an independent contractor." Id. at comment a. The legislative history of the cited Medicare regulations clearly and unambiguously indicates such an intention: "These revisions are intended to simplify and clarify Federal requirements, to provide maximum flexibility in hospital administration while strengthening patient health and safety, to emphasize outcomes rather than processes, to promote cost effectiveness while maintaining quality care, and to achieve more effective compliance with Federal requirements." 51 Fed. Reg. 22010 (1986). The agency comment continues: "The 1983 NPRM [Notice of Proposed Rulemaking], was intended to clarify that the hospital has ultimate responsibility for services, whether they are provided directly, such as by its own employees, by leasing, or through arrangements, such as formal contracts, joint ventures, informal agreements, or shared services. Because many contracted services are integral to direct patient care and are important aspects of health and safety, a hospital cannot abdicate its responsibility simply by providing that service through a contract with an outside resource. For purposes of assuring adequate care, the nature of the arrangement between the hospital and the "contractor" is irrelevant. The NPRM, therefore, proposed to specify that the governing body must be responsible for these services and that the services must be provided in a safe and effective manner." 51 Fed. Reg. 22015 (1986). Because the statute imposes the duty out of concern for public safety, the bank could not avoid its obligations by delegating the duties to an

-10-

CERTIFIED COPY

independent contractor. *MBANK, 836 S.W.2d at 153.*

43.    There is no question that these Medicare rules were clearly designed to promote assurance of public safety by participating hospitals. Indeed, in a related context, the United States Supreme Court has recognized this purpose. *Fischer v. United States,* 529 U.S. 667, 671-72, 120 S.Ct. 1780, 1783-84 (2000). Moreover, the regulations clearly provide that the participating hospitals are to remain "responsible" for the acts of all contractors employed at the hospital. Accordingly, these Medicare regulations impose a non-delegable duty to provide medical, nursing, surgical, anesthesia, and related services in a safe and effective manner, and any failure to do so must result in liability to the participating hospital. *MBank, 836 S.W.3d at 153.*

### VI. Violation of Regulations as Evidence of Departure from Standard of Care

44.    Administrative regulations established for the protection of persons who bring suit are independently admissible as relevant to the standard of care, even if the regulation does not satisfy the requirements to establish a claim of negligence per se. *See, e.g., Wal-Mart Stores, Inc. v. Seale,* 904 S.W.2d 718, 720 (Tex. App. - San Antonio 1995, no writ) (OSHA regulations).

45.    In particular, Medicare regulations are relevant as to whether hospitals have committed malpractice. *Brogdon,* at 103 F.Supp.2d at 1333. Indeed, in 1998 the Texas Supreme Court expressly recognized that a statute or regulation can serve as a standard of conduct for an existing common-law duty as the basis for imposition of liability under a common-law negligence cause of action. *Perry v. S.N.,* 973 S.W.2d 301, 305 (Tex. 1998).

CERTIFIED COPY

### VII. Hospital Voluntary Adoption of Regulations as Internal Standards of Care

46.  Moreover, on information and belief, strict adherence with Medicare rules and regulations is the express policy of Valley Regional Medical Center.  Under Texas law, if the policies are those of the hospital, they are admissible for the purpose of determining the proper standard of care of the hospital.  *McCombs v. Childrens' Med. Center of Dallas,* 1 S.W.3d 256, 259 (Tex. App. - Texarkana 1999, pet. denied); *Denton Regional Med. Ctr. v. LaCroix,* 947 S.W.2d 941, 951 (Tex. App. - Fort Worth 1997, writ dism'd by agr.).

### Malice

47.  Defendants' conduct amounts to malice in that it was specifically intended by the defendants to cause substantial injury to the plaintiffs; or, when viewed objectively from the standpoint of the actor at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which the actors had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

### Damages

48.  As a direct and proximate cause of defendants' negligence and malice, the plaintiffs were injured.  Had defendants not been negligent or malicious, the plaintiffs would not have been injured.

### I. Ramona Barrera

49.  As a direct and proximate result of the negligence of Defendants, plaintiff Ramona Barrera suffered the following damages.

-12-

CERTIFIED COPY

a.    Past and future pain and suffering;

b.    Past and future mental anguish;

c.    Past and future physical impairment;

d.    Past and future disfigurement;

e.    Wage loss;

f.    Future loss of earning capacity;

g.    Medical expenses that have been incurred in the past and these that will reasonably be incurred in the future;

h.    Pre judgment and post judgment interest;

i.    Exemplary damages, governed by Section 41.008(c) of the Civil Practice and Remedies Code; and

j.    Any other damages allowed under the law and proved in the trial of this case.

### II. David Barrera

50.    As a direct and proximate result of the negligence of defendants, plaintiff David Barrera suffered the following damages.

a.    Past and future mental anguish;

b.    Lost financial contributions;

c.    Past and future loss of services;

d.    Loss of advice, counsel and care;

e.    Loss of consortium;

f.    Loss of society and companionship;

g.    Past and future loss of household services;

h.    Prejudgment and post judgment interest;

CERTIFIED COPY

i.     Exemplary damages governed by Section 41.008(c) of the Civil Practice and Remedies Code;

j.     Past and future medical expenses and nursing care expenses; and

k.     Any other damages allowed under the law and proved in the trial of this case.

### *Jury Application*

51.    Pursuant to TEX. R. CIV. PROC. 216, plaintiffs respectfully make application for a trial by jury.

52.    The requisite jury fee is herewith tendered.

### *Prayer*

53.    Plaintiffs respectfully request that defendants be cited to appear and answer, and that on final trial, plaintiffs are awarded judgment against defendants, jointly and actually, for an amount in excess of the minimum jurisdictional limits of this court, together with pre-judgment and post-judgment interest at the highest rate allowed by law, for exemplary damages, and for all such other and further relief, general and special, to which plaintiffs may be justly entitled.

Respectfully submitted,

RILEY LAW FIRM

Timothy D. Riley
State Bar No. 16931300
P. O. Box 542179
Houston, Texas 77254-2179
(713) 868-1717
(713) 868-9393 Fax



TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT CAMERON COUNTY, TEXAS
DATE 4/17/02
_____
DEPUTY

-14-

CERTIFIED COPY

McGEHEE & PIANELLI, L.L.P.

*

James V. Pianelli  TBN 15966740
Jack E. McGehee  TBN 13623700
1225 N. Loop West, Suite 810
Houston, Texas  77008
(713) 864-4000
(713) 868-9393 Fax

**ATTORNEYS FOR PLAINTIFFS**

\*      Signed by Timothy D. Riley, by permission

-15-

CERTIFIED COPY

Citation for Personal Service  - GENERAL                    Lit. Seq. # 5.008.01

No. 2002-02-000823-B

ORIGINAL

(105)

T H E    S T A T E    O F    T E X A S

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: FRANCIS M. GUMBEL, M.D.
    645 VILLA MARIA BLVD.
    BROWNSVILLE, TEXAS 78520

the          DEFENDANT          , GREETING:

You are commanded to appear by filing a written answer to the

PLAINTIFF'S ORIGINAL PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 138th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas.  Said          PETITION          was filed on FEBRUARY 25, 2002 .  A copy of same accompanies this citation.

The file number of said suit being No. 2002-02-000823-B.

The style of the case is:

RAMONA BARRERA AND DAVID BARRERA
VS.
BROWNSVILLE-VALLEY REGIONAL MEDICAL CENTER';COLUMB

Said petition was filed in said court by          TIMOTHY D. RILEY
(Attorney for          PLAINTIFF          ), whose address is
P.O.BOX 542179 HOUSTON, TEXAS  77254-2179                    .

The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Brownsville, Texas, this the 25th day of FEBRUARY , A.D. 2002.

RETURN OF OFFICER

Came to hand the _16_ day of _Feb_ , _2002_; at _two_ o'clock _A_.M., and

~~executed~~ (not executed) on the _1_ day of _March_ , _02_, by delivering to

_Francis M. Crumble, M.D._ in person a true copy of this Citation,

upon which I endorsed the date of delivery, together with the accompanying copy

of the _Original Petition_ .

Cause of failure to execute this citation is: _____

_____

FEES serving 1 copy

Total....... $_5/5_

Fees paid by:_____

ABEL PEREZ JR.
Constable Pct. 2
Sheriff/constable Cameron County, County, TEXAS

By _Sergio Vasquez_ Deputy

FILED _8:55_ O'CLOCK _A_ M
AURORA DE LA GARZA, DIST. CLERK

MAR 06 2002

DISTRICT COURT, CAMERON COUNTY, TEXAS
DEPUTY
Rosie Sotelo

| CONSTABLE Pct. CAMERON COUNTY | ATTEMPTED SERVICE | |
|---|---|---|
| DATE | TIME | REMARKS |
| 3-1 | 9:10 A | WO-LC |

DISTRICT COURT
A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK

RUN DATE 04/17/02
RUN TIME 2:40 PM

BROWNSVILLE-VALLEY REGIONAL MEDICAL CENTER ; COLUMB

RAMONA BARRERA AND DAVID BARRERA

VS

*  *  *    C L E R K ' S    E N T R I E S    *  *  *

CERTIFIED COPY

00590901
TIMOTHY D. RILEY
P.O.BOX 542179
HOUSTON, TEXAS                    77254 2179

00606601
CARLA M. SAENZ
1325 PALM BLVD., SUITE H
BROWNSVILLE, TEXAS    78520 0000

(10)

DAMAGES/NEGLI(

02/25/02  ORIGINAL PET)
02/25/02  CITATION: FRI
02/25/02  SERVED: 02
02/25/02  CITATION: RI(
02/25/02  SERVED: UN
02/25/02  CITATION: BR(
02/25/02  MEDICAL
          SERVED: 02
02/25/02  CITATION: COL
02/25/02  SYSTEM, L.P.
          SERVED: 02
02/25/02  CITATION: VAl
          CENTER
          SERVED: 03
02/25/02  CITATION: HCA
          SERVED:
02/25/02  JURY FEE: Pd.
03/05/02  ORIGINAL ANSW
          M.D.
03/05/02  DEFT'S, FRANC
          APPLICATION A
03/05/02  JURY TRIAL
03/07/02  DEFT'S, FRANC
03/07/02  CERTIFICATE O
          DISCOVERY
03/07/02  ORIGINAL ANSW
          M.D.
03/15/02  DEFT, RICHARE
03/15/02  DEMAND (RMOCF

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT CAMERON COUNTY, TEXAS
DATE 4/17/02
DEPUTY

RAMONA BARRERA AND DAVID BARRERA

VS

BROWNSVILLE-VALLEY REGIONAL MEDICAL CENTER ; COLUMB

*  *  *   C L E R K ' S   E N T R I E S   *  *  *

(10)

00590901
TIMOTHY D. RILEY
P.O.BOX 542179
HOUSTON, TEXAS                    77254 2179

00606601
CARLA M. SAENZ
1325 PALM BLVD., SUITE H
BROWNSVILLE, TEXAS      78520 0000

03/15/02                                        DAMAGES/NEGLI

03/15/02   DEFT, RICHARD
           SPECIAL EXCE
03/15/02   ORIGINAL PE
03/15/02   AGREED APPLI
           3 DISCOVERY C
03/15/02   PLAN DESIGN
03/15/02   DEFT, RICHARD
           MOTION FOR PR
03/15/02   SETTING AND
03/15/02   DEFT, RICHARD
           MOTION FOR BI
03/15/02   EXEMPLARY D
03/15/02   SCHEDULE/VACA
           ONCKEN (RMOC
04/08/02   PLFS' CERTIFI
           (RMOCHOA)
04/10/02   RULE 11 AGREE

A TRUE COPY I CERTIFY
...EDRA DE LA GARZA, CLERK
...RRET COURT CAMERON COUNTY, TEXAS
DATE ____ /__/ 82
DEPUTY

**CAUSE NO. 2002-02-0823-B**

| | | |
|---|---|---|
| RAMONA BARRERA and DAVID BARRERA | * * * | IN THE DISTRICT COURT |
| VS. | * * | CAMERON COUNTY, TEXAS |
| BROWNSVILLE-VALLEY REGIONAL MEDICAL CENTER; COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P.; VALLEY REGIONAL MEDICAL CENTER; HCA, INC., RICHARD L. FREMAUX, M.D.; AND FRANCIS M.. GUMBEL, M.D. | * * * * * * * | 138TH JUDICIAL COURT |

**DEFENDANTS' CONSENT TO REMOVAL TO FEDERAL COURT**

TO THE HONORABLE JUDE OF SAID COURT:

I.

The undersigned attorneys, on behalf of their client's, consent to this case being removed to federal court.

Mr. Kevin Oncken
Uzick & Oncken, P.C.
Fountainhead One Building
8200 IH-10 West, Suite 208
San Antonio. Texas 78230
Telephone (210) 341-7703
Facsimile (210) 341-1570
Attorney for Defendant,
Dr. Richard L. Fremaux, M.D    Fed ID # 12915

Ms. Carla Saenz
~~Law Office of~~ Carla Saenz y Associates, P.L.L.C.
1325 Palm Blvd., Suite H
Brownsville, Texas 78520
Telephone (956) 541-2862
Facsimile (956) 541-2864
Attorney for Defendant, Dr. Francis
M. Gumbel, M.D.
Federal ID # 7994

Mr. William Gault
Brin & Brin, P.C.
1325 Palm Blvd., Suite A
Brownsville, Texas 78520
Telephone (956) 544-7110
Facsimile (956) 544-0607
Attorney for Defendants Brownsville-Valley
Regional Medical Center and Columbia Valley
Healthcare System. L.P. and Valley Regional
Medical Center
Federal ID No 14685

**ATTORNEYS FOR PLAINTIFFS**

Mr. Timothy Riley
SBN: 16931300
Riley Law Firm
PO Box 542179
Houston, Texas 77254
Telephone No. (713) 868-1717

Mr. James V. Pianelli
SBN: 15966740
Mr. Jack E. McGehee
SBN: 13623700
McGehee & Pianelli, L.L.P.
1225 N. Loop West, Suite 810
Houston, Texas 77008
Telephone No. (713) 864-4000

**ATTORNEYS FOR DEFENDANT FRANCIS M. GUMBEL, M.D.**

Ms. Carla Saenz
SBN: 17514595
Federal I.D. No. 7994
Carla Saenz & Associates
1325 Palm Blvd., Suite H
Brownsville, Texas 78520
Telephone No.(956) 541-2862

**ATTORNEYS FOR DEFENDANT RICHARD L. FREMAUX, M.D.**

Mr. J. Kevin Oncken
SBN: 15280050
Uzick & Oncken, P.C.
Fountainhead One Building
8200 IH-10 West, Suite 208
San Antonio, Texas 78230
Telephone No. (210) 341-7703

**ATTORNEYS FOR DEFENDANTS BROWNSVILLE-VALLEY REGIONAL MEDICAL
CENTER, COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P., and VALLEY
REGIONAL MEDICAL CENTER**

Mr. William Gault
SBN: 07765050
Federal I.D. No. 14685
Brin & Brin, P.C.
1325 Palm Blvd. Suite A
Brownsville, Texas 78520
Telephone No. (956) 544-7110

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

RAMONA BARRERA AND DAVID     *
BARRERA     *
    *
VS.     *        CIVIL ACTION NO._____
    *        JURY DEMANDED
BROWNSVILLE-VALLEY REGIONAL     *
MEDICAL CENTER; COLUMBIA VALLEY  *
HEALTHCARE SYSTEM, L.P.; VALLEY     *
REGIONAL MEDICAL CENTER; HCA,     *
INC., RICHARD L. FREMAUX, M.D.; AND  *
FRANCIS M.. GUMBEL, M.D.     *

### DEFENDANTS' BROWNSVILLE-VALLEY REGIONAL MEDICAL CENTER, COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P. AND VALLEY REGIONAL MEDICAL CENTER'S NOTICE OF REMOVAL

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Brownsville-Valley Regional Medical Center, Columbia Valley Healthcare

System, L.P. and Valley Regional Medical Center, having been served as Defendants in a lawsuit brought

in the 138th Judicial District Court of Cameron County, Texas in cause number 2002-02-0823-B and files

this, their notice of removal of said cause to the United States District Court for the Southern District of

Texas, Brownsville Division and as grounds therefore would respectfully show as follows:

I.

### AUTHORITY TO REMOVE

Plaintiffs originally filed their petition on February 22, 2002 alleging medical negligence and named

Brownsville-Valley Regional Medical Center, Columbia Valley Healthcare System, L.P., Valley Regional

Valley Regional Medical Center, HCA Inc., Richard L. Fremaux, M.D., and Francis M. Gumbel, M.D. as Defendants. The citation and petition were served on Defendants Brownsville-Valley Regional Medical Center, Columbia Valley Healthcare System, L.P., Valley Regional Medical Center on March 28, 2002. The Plaintiffs are alleging a federal question only against the hospital Defendants and therefore the hospital Defendants are the only proper Defendant that can remove this case. True and correct copies of the Plaintiffs' pleadings and executed citations and incorporated herein for purposes of removal. This notice of removal is filed within 30 days of receipt of the petition and citation and is timely filed under 28 U.S.C. section 1446(b). Attached is the written consent of removal by the co-defendants.

II.

## BASIS OF JURISDICTION

Defendant would show the Court that this is a civil action and removal is based upon federal question jurisdiction. 28 U.S.C. 1441(a). Plaintiffs are alleging that the doctors committed medical negligence. Plaintiffs acknowledge that under Texas law, a hospital ordinarily has no duty to supervise the practice of medicine of independent contractor physicians on staff. See paragraph 39 of Plaintiffs' Original Petition. However Plaintiffs attempt to subvert that law by applying medicare rules. See paragraphs 37, 38, 41-45 of Plaintiffs' Original Petition. Plaintiffs are claiming that the medicare law provide the basis for the hospital Defendants to have liability for the doctor Defendants. Plaintiff's cite the basis of their claim as 42 CFR §482.23, 482.51, 482.12(e), and 51 Fed. Req. 22010, 22015.

III.

Attached to this notice of removal are certified copies of the Plaintiffs' pleadings and the executed

citations for service of process. Defendant HCA, Inc. has not been served. Also attached are certified

copies of court orders and a certified copy of the docket sheet. Also attached is an index of matters that

are being filed, a list of all counsel of record and Defendants Consent to Remove.

IV.

This Defendant demands a trial by jury.

WHEREFORE, these Defendants petition that the lawsuit which has been filed in the 138th Judicial

District Court of Cameron County, Texas in cause number 2002-02-0823-B be removed by this

Honorable Court to the United States District Court of the Southern District of Texas, Brownsville Division,

said court being the District Court of the United States for the district and division for which this action is

currently pending.

Respectfully submitted,

By: _____

William Gault
Attorney in Charge
Federal ID No. 14685
State Bar No. 07765050
1325 Palm Blvd., Suite A
Brownsville, Texas 78520
(956) 544-7110
(956) 544-0607 Telecopier

Of Counsel:

BRIN & BRIN, P.C.
1325 Palm Blvd., Suite A
Brownsville, Texas 78520
(956) 544-7110
(956) 544-0607 Telecopier

ATTORNEY FOR DEFENDANTS
BROWNSVILLE-VALLEY REGIONAL
MEDICAL HOSPITAL, COLUMBIA
VALLEY HEALTHCARE SYSTEM, L.P.,
VALLEY REGIONAL MEDICAL CENTER

## CERTIFICATE OF SERVICE

This is to certify that the above and foregoing instrument has been forwarded to counsel as indicated below on this the 1st 22nd day of April, 2002.

Mr. Timothy Riley                    VIA CM/RRR # 7000 1670 0001 2715 7242
Riley Law Firm
PO Box 542179
Houston, Texas 77254

BARRERA/VRMC. NTCTOFED
PAGE 4

Mr. James V. Pianelli                          **VIA`REGULAR MAIL**
Mr. Jack E. McGehee
McGehee & Pianelli, L.L.P.
1225 N. Loop West, Suite 810
Houston, Texas 77008

Ms. Carla Saenz                                **VIA REGULAR MAIL**
Carla Saenz & Associates
1325 Palm Blvd., Suite H
Brownsville, Texas 78520

Mr. J. Kevin Oncken                            **VIA REGULAR MAIL**
Uzick & Oncken, P.C.
Fountainhead One Building
8200 IH-10 West, Suite 208
San Antonio, Texas 78230

_____
William Gault